STEEN, Respondent, vs. GLEESON and others, Appellants.

*September 13—October 9, 1928.*

For the appellants the cause was submitted on the briefs of *Bundy, Beach & Holland* of Eau Claire.

For the respondent there was a brief by *J. A. Markham*

of Independence, *J. J. Gleeson* of Alma, and *Q. H. Hale* of La Crosse, and oral argument by *Mr. Hale*.

CROWNHART, J. Among other things, the defendant, in the court below, made a motion to have the answer to question number 4 changed from "Yes" to "No." That question and answer were as follows:

"*Q*. At the time of the accident, was the defendant Arnold Schultz an employee or agent acting in behalf of the defendants John Gleeson and Arnold Schultz? *A*. Yes."

The motion was denied. We think the motion should have been granted.

It appears that the plaintiff, Steen, and one Kensmoe were visiting at the home of the defendant Schultz. The plaintiff, Steen, and the defendant Schultz were married to sisters of Kensmoe. According to the testimony of the plaintiff, on the evening in question, at about 10 o'clock, he went to the filling station of the partnership of Gleeson and Schultz, who also operated a garage, and said:

" 'John Gleeson, let's go out and have a bottle of beer.' He said, 'Right now I ain't got time,' he said, 'If you want to go you can go ahead.' I said, 'Can a man get a car?' He said, 'Yes you can get a car if you want to.' So he told one guy, I don't know who the fellow was, to drive the car over and fix it up. We stood and talked and Kensmoe come and I said, 'Come on, let's have a bottle of beer,' and when we got ready to go Schultz come and I said, 'You better go along,' and John Gleeson said, 'Yes, better go along and drive the car because Steen isn't a very good driver.' I paid Gleeson $2 for the car, a Dodge coupé, before we left."

Upon cross-examination plaintiff testified:

"As we were starting out to Krier's, Schultz came along and we asked him to go with us. We told him we were going out for some beer and that was agreeable to him."

And again, on redirect examination, he testified:

"I told Schultz that I never drove a gear shift car before and it wouldn't be very handy for me to drive it. John

Gleeson said that would be all right and said to Schultz, 'Schultz, you better go along and drive for them.' "

On recross examination he said:

"*Q.* Just before you started out to Krier's John Gleeson told you that you had better take Schultz along with you,— that he was better acquainted? *A.* I said, 'There is Schultz. We will get him to go.' John says, 'Yes, get him to go with you.' "

The defendant Arnold Schultz testified:

"I was not there when Steen hired this car of Gleeson. He had already hired the car before I got there. I don't know if he had paid for it but I think he had. My brother-in-law called to me and asked me to drive the car. I don't think he knew Mr. Steen very well."

This is in substance all the evidence before the jury on the question at issue. The situation seems to be perfectly plain that the plaintiff and his brother-in-law, Kensmoe, wanted to go out into the country some six miles to get some home brew to drink. He engaged an automobile through Gleeson, from the partnership of Gleeson and Schultz, for that purpose. He wished to drive the automobile himself. The automobile was delivered, and he paid the rent of two dollars in cash, and the deal was closed. Steen discovered that the mechanism of the car was different than he was used to, and was somewhat fearful of his ability to drive the car. At that time Schultz came on the scene, and plaintiff appealed to Schultz to go along and drive the car, and Gleeson acquiesced and suggested that Schultz go along with his brothers-in-law to drive the car. There was no consideration moving to the partnership for the services of Schultz. Schultz went along as a pure accommodation to the plaintiff, his brother-in-law, and no doubt to enjoy the trip and refreshments with them; at least, it appears in evidence that they all partook of refreshments on their journey. Schultz was host to his brothers-in-law at his home, and it was

natural that he should go with them on this trip as a member of the party, and not as an agent of the firm of Gleeson and Schultz. We think the evidence conclusively establishes such to be the fact, and that the answer of the jury cannot be sustained.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the action.